**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RICHARD C. SIMMONS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case no. 4:12cv01138 TCM** |
| | ) | |
| **JAY CASSADY, Warden of the** | ) | |
| **Jefferson City Correctional Center,** | ) | |
| | ) | |
| **Respondent.**[1] | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court for review and final disposition of a petition for writ of habeas corpus filed by Richard C. Simmons ("Petitioner") pursuant to 28 U.S.C. § 2254 to challenge a 2009 judgment entered following a trial in which the jury found Petitioner guilty of first-degree murder and armed criminal action in the January 2008 death of Pamela Pugh ("Victim").[2] Respondent filed a response [Doc. 11] to the petition, including materials from the underlying state court proceedings [Doc. 12].[3] Petitioner attached copies of several state court materials to his petition [Doc. 1-1] and filed a traverse [Doc. 26].

---

[1] Petitioner is reportedly incarcerated at the Jefferson City Correctional Center (JCCC), where Jay Cassady is now the warden. Therefore, the Court will substitute Jay Cassady for the originally named Respondent. See Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts. Because Petitioner is not subject to consecutive sentences imposed by the trial court for the conviction he is challenging in this federal habeas proceeding, the Court will not add Chris Koster, the Attorney General of the State of Missouri, as a named respondent in this proceeding. See Rule 2(b) of the Rules Governing Section 2254 Cases in the United States District Courts.

[2] This matter is before the undersigned United States Magistrate Judge on consent of the parties. 28 U.S.C. § 636(c).

[3] The Court will require that the attachment to Petitioner's Petition [Doc. 1-1], as well as Respondent's exhibits 2, 3, and 4 be placed and maintained under seal as they contain personally identifying information.

Petitioner presents four grounds for relief in his petition: that the pre-trial court[4] erred in not allowing Petitioner's attorney to withdraw or in not granting a continuance shortly before the start of trial (ground one); that his trial attorney provided ineffective assistance of counsel by failing to call as a witness Estress Lindsay in apartment 33, as well as the unidentified tenants of apartments 30 and 31, and "the maintenance man for the apartments" in the building on Greenwood where Petitioner and Victim once lived ("Greenwood apartments") (ground two); that the trial court erred in allowing the jury to see Petitioner in the courtroom in handcuffs (ground three); and that Petitioner's trial attorney provided ineffective assistance of counsel in failing to elicit testimony from Petitioner that Victim had assaulted him in 2007 and that Petitioner was under the influence of several prescription medications and alcohol at the time of the January 2008 incident (ground four).

After careful consideration, the Court will deny the petition upon finding no merit in the part of ground four contending that Petitioner's trial attorney provided ineffective assistance of counsel in failing to elicit testimony from Petitioner about Victim's prior assaults on Petitioner, and concluding that the remaining claims are procedurally barred and may not be considered on their merits.

## Background

In mid-December 2008, Petitioner was charged, as a prior and persistent offender, with one count of first-degree murder in violation of Mo. Rev. Stat. § 565.020 and one count of armed criminal action in violation of Mo. Rev. Stat. § 571.015 for causing the death of Victim

---

[4] References to the pre-trial court are references to the court and judge handling Petitioner's criminal case before the case was assigned to another judge for trial, which will be referred to as the trial court.

on January 17, 2008, by striking her with a dangerous instrument.[5] (Indictment, Resp't Ex. 2, at 8-9.)  Petitioner was arraigned on those charges on January 6, 2009.  (Docket entry, dated Jan. 6, 2009, Legal File, Resp't Ex. 2, at 1.)

On January 13, 2009, over the objection of the State, Petitioner requested a continuance of the January 20, 2009, trial date because he had recently been arraigned on the first-degree murder charge and "need[ed] time to adjust trial strategy or negotiate plea agreement." (Order, filed Jan. 13, 2009, Legal File, Resp't Ex. 2, at 15.)  By order, dated January 14, 2009, the pre-trial court rescheduled trial for February 9, 2009.  (Order, filed Jan. 14, 2009, Legal File, Resp't Ex. 2, at 14.)  On February 6, 2009, the pre-trial court denied Petitioner's trial attorney's motion to withdraw "to allow private counsel . . . to enter" his appearance for Petitioner.  (Order, filed Feb. 6, 2009, Legal File, Resp't Ex. 2, at 26; see also colloquy between Petitioner and the trial court, outside the presence of the venire panel, discussing Petitioner's desire to have a private attorney represent him, Trial Tr., Resp't Ex. 1, at 150-56.)  Petitioner reports that the new attorney requested a continuance of the trial date.

In addition to playing the recordings of the 911 telephone calls (Trial Tr., Resp't Ex. 1, at 205) and introducing numerous exhibits, the State presented fourteen witnesses during its case-in-chief and rebuttal at the three-day trial that began on February 9, 2009.  (Trial Tr., Resp't Ex. 1.)  Petitioner testified in defense of the charges.  (Id. at 294-370.)

_____

[5]  The record reveals that Petitioner was originally charged in early 2008 for the incident resulting in Victim's death.  (See copy of part of original Indictment available at Doc. 1-1 at 3; Sentencing Tr., Resp't Ex. 1 at 460; Post-Conviction Mot. Hr'g Tr., Resp't Ex. 6, at 10-11; see also copy of part of docket sheet provided as Exhibit 13 to Pet'r Pro Se Post-Conviction Mot., Legal File, Resp't Ex. 7, at 22.)  In particular, after a complaint was filed, Petitioner was charged by an indictment filed in February 2008 with murder in the second degree and armed criminal action for Victim's death. (See Post-Conviction Mot. Hr'g Tr., Resp't Ex. 6, at 8-12.)  The State subsequently filed a memorandum of nolle prosequi with respect to the second-degree murder and armed criminal action charges. (See Post-Conviction Mot. Hr'g Tr., Resp't Ex. 6, at 18-20.)

Victim's mother, Bernice Tolbert, testified, in relevant part, that Petitioner made threats to her through telephone calls Petitioner repeatedly made to her at night in late 2007 after Victim had stopped staying with Petitioner. (Id. at 168-72.) In those calls, Petitioner threatened to kill her or Victim. (Id. at 171.) In an effort to stop those telephone calls, Tolbert applied for a restraining order against Petitioner. (Id. at 172.) The telephone calls ended after Victim began staying with Petitioner again. (Id. at 178.)

Oscar Davis stated that, before her death, Victim came to his home five days a week to take care of him for three hours in the late afternoon each day. (Id. at 269-70.) Davis noted that Petitioner called Victim on Davis' home telephone every day she was there. (Id. at 270-71.) On January 16, 2008, Petitioner called and told Davis that he was going to "knock" the "bitch," which Davis took as a threat to "tak[e Victim's] life." (Id. at 272-74.)

During January 2008 Queena Johnson lived on the second floor of the Page Avenue apartment building where Petitioner and Victim lived on the third floor. (Id. at 188-89.) She saw Petitioner and Victim as they left the building to walk to a store and when they returned, with chips, between 4:00 p.m. and 5:00 p.m. on January 16, 2008. (Id. at 190-93; 197-98.) She did not notice that Victim had any injuries on those occasions. (Id. at 191-93.) That evening she stayed in her apartment. (Id. at 194.) After awhile she heard what sounded like furniture being moved, voices, and then Victim saying "Don't put your hands on me no more." (Id. at 194-96.) The sound woke her up at about 2:00 a.m. on January 17th. (Id. at 196.)

Petitioner's sister, Sherrion Zinn, testified that Petitioner called her early the morning of January 17, 2008, telling her that Victim was lying on the bathroom floor; and she called 911, after that call and after a subsequent call from Petitioner, to report that Victim was on the bathroom floor and to assist the responders in locating the correct apartment. (Id. at 179-88.)

Zachary Welker, an officer with the St. Louis Metropolitan Police Department ("City Police Department"), testified that at approximately 9:15 a.m. on January 17, 2008, he received a call to investigate a "sudden death" in the 5300 block of Page Avenue. (<u>Id.</u> at 201-02.) The call to respond resulted from two 911 calls that had been received earlier. (<u>Id.</u> at 202-03.) He was originally directed to 5354 Page Avenue, learned that address did not exist, and reported that 5356 Page matched the description that had been provided and would be the location he checked. (<u>Id.</u>) He knocked on the door of apartment 303 at 5356 Page Avenue and Petitioner answered. (<u>Id.</u> at 206-07.) Petitioner let Officer Welker in the apartment, which did not appear to be in disarray, and motioned toward the bathroom, where Officer Welker noticed a naked black female lying on the floor, blood smeared on the bathtub and floor, and the presence of "chip or snack bags" as well as cleaning supplies. (<u>Id.</u> at 208-09.) Officer Welker handcuffed Petitioner, who did not appear to have any injuries and had a tear in the t-shirt he was wearing. (<u>Id.</u> at 210, 213.)

Tom Carroll, a homicide detective with the City Police Department, responded to the scene at apartment 303 of 5356 Page Avenue on January 17, 2008, noticed some blood in the bedroom and found the bathroom "covered in blood." (<u>Id.</u> at 277-78.) Additionally, he saw Victim, with a chip bag and a knife by her body, and several cleaning items, in the bathroom. (<u>Id.</u> at 282-83.) Petitioner was at the scene in handcuffs, and appeared to have no injuries but several holes in the t-shirt he was wearing. (<u>Id.</u> at 286-88.)

Dawn Albers, a police officer with the City Police Department who works in that Department's crime lab, testified that she arrived at the crime scene and noticed blood splatter on the floor, walls, and television in the bedroom and in numerous places in the bathroom, and took pictures of the scene. (<u>Id.</u> at 233-36). She swabbed the blood splatter and seized a cane

she found in the bedroom, as well as various items, including a knife, she found in the bathroom. (Id. at 237-45.)

Erin Duke, a forensic biologist with the City Police Department crime lab, found possible biologic fluids on the cane, swabs, and other items seized from the bathroom and bedroom, and stored them for later DNA analysis. (Id. at 248-59.)

Karen Preiter, a DNA analyst for the City Police Department, tested swabs from the cane and other items seized from the bathroom, swabs of splatter at the scene, Petitioner's clothing samples, and items from Victim, against known samples from Victim and Petitioner. (Id. at 261-268.) Her analysis revealed that Victim was the major contributor of the DNA on the cane, blood spatter samples, and on cuttings from the jeans and t-shirt worn by Petitioner. (Id.)

Dr. Ariel Goldschmidt, a forensic pathologist who worked at the City of St. Louis medical examiner's office, performed an autopsy on Victim. (Id.) Dr. Goldschmidt described Victim's injuries as including several lacerations and contusions on her head, specifically, on her scalp, face, ears, and tongue; bleeding under her scalp and on her brain; and injuries all over her body, including two fractured ribs in the back as well as contusions and abrasions on her chest, arms, back, and front. (Id. at 216-224.) She testified that the injuries to Victim's face could have been caused by a fist or a cane, and opined Victim died from "blunt trauma of [or strong force on] the head and back." (Id. at 227-28.)

After the State rested, Petitioner unsuccessfully presented a motion for judgment of acquittal at the close of the State's evidence, and waived an opening statement. (See id. at 293, 294.) Petitioner then testified. (Id. at 295.)

Petitioner said he and Victim began living together at the end of 2006, in the Greenwood apartments and then, starting in November 2007, in an apartment on Page Avenue.

(Id. at 313-14, 331.) They lived apart for a short while in December 2007, and then moved back in together that month. (Id. at 314.)

On January 16, 2008, Petitioner testified he was using a cane to walk because his gout had "flared." (Id. at 325.) During that evening Petitioner and Victim were drinking alcohol and arguing in their apartment. (Id. at 319-20.) Petitioner had been treated with radiation and chemotherapy for throat cancer about five months earlier, lost one hundred pounds, and took several medications that proscribed drinking alcohol while taking the medications. (Id. at 320-23.) Petitioner reported that, when he was on his medications and drank alcohol, he felt weaker, uncoordinated, confused, and drowsy. (Id. at 322-23.) The night of January 16, 2008, Victim, who weighed more than Petitioner, started "swinging a knife" at Petitioner; he "tr[ied] to hit her and hit her with [his] cane" "to stop her from swinging the knife"; at some point, she dropped the knife; then she fell into the bathtub, and got out and "passed out," so Petitioner thought she had had a heart attack. (Id. at 323-29; 350.) He tried to call his sister who is a nurse "to find out how to do CPR," but called a different sister, and then "passed out." (Id. at 329-30.) He knew that Victim, Victim's mother, and another woman had sought orders of protection against him; in early January 2008 he went to one court proceeding that had been scheduled to address those orders, and that proceeding was rescheduled for January 17th. (Id. at 340-42.)

During rebuttal, the State presented the testimony of five witnesses. George Boggs, an officer with the City Police Department, testified that he responded in April 2007 to a call of "a cutting" and found Victim "bleeding from the right side of her cheek" where there was a cut that was approximately an inch long. (Id. at 385-87.) She told Officer Boggs that Petitioner had cut her. (Id. at 386.) Scott Sailor, an officer with the City Police Department who was a

detective in May 2007, testified that he was present when Petitioner was arrested in May 2007 for first-degree assault and armed criminal action for the incident involving Victim. (Id. at 388-90.) Detective Sailor's partner, who was arresting Petitioner at that time, advised Petitioner of his Miranda rights and Petitioner stated that he understood them. (Id. at 390.) Petitioner then told Detective Sailor that "she had forgiven him for the incident and that they were okay." (Id.)

Linda Russo, a latent print examiner for the City Police Department, testified that she examined the knife found in the bathroom for the presence of identifiable latent prints and found none. (Id. at 394-96.)

Detective Carroll took the stand again and testified that, when he returned to the homicide office around noon on January 17, 2008, he advised Petitioner of his Miranda rights and Petitioner indicated that he understood those. (Id. at 398-99.) Petitioner then told Detective Carroll that Victim was dropped off at the Page Avenue apartment at about 9:30 p.m. on January 16th, after she was in a fight on Romaine Place; Petitioner went to bed; Petitioner heard Victim slip and fall in the bathroom a couple of times; then called his sister to tell her that Victim "had slipped and f[a]ll[en] in the bathroom" and later called his sister again to say "he thought [Victim] was . . . dead on the bathroom floor. " (Id. at 400-01.) Petitioner also told Detective Carroll that Victim "came at him with a knife [and h]e hit her in the hand to knock the knife away," although he did not indicate whether it "was an isolated hit or [part of] an ongoing struggle." (Id. at 401; see also id. at 405.) Petitioner said he was "mad" at Victim for being at Romaine Place because "she was supposed to be at work [and] ha[d] a boyfriend there"; and reported to Detective Carroll that he "had hit [Victim] before" and there were restraining orders "from [Victim's] people." (Id. at 402.) Finally Petitioner told Detective Carroll that after he woke up on January 17th he "found [Victim] dead on the bathroom floor.

There was blood everywhere, he started to clean it up" and then stopped to call his sister. (<u>Id.</u> at 402-03.) Upon investigation, Detective Carroll learned that a place at 5889 Romaine Place may have a connection to Victim, but it was a vacant building. (<u>Id.</u> at 403-04.)

Finally, Victim's younger sister, Kimberly Boehm, testified that Victim loved Petitioner and was not dating anyone else while she dated Petitioner; and that her father owned the property at 5889 Romaine Place, where their family had lived years before, but it was a vacant building in January 2008. (<u>Id.</u> at 406-08.)

Petitioner submitted a motion for judgment of acquittal at the close of all the evidence, which the trial court denied; and the trial court found Petitioner to be a prior and persistent offender. (<u>Id.</u> at 410-11.)

The jury found Petitioner guilty of the charged offenses of first-degree murder and armed criminal action. (Verdict Forms, Legal File, Resp't Ex. 2, at 50 and 51.) The trial court subsequently denied Petitioner's motion for judgment of acquittal notwithstanding the verdict of the jury or in the alternative motion for a new trial; and sentenced Petitioner to concurrent terms of imprisonment of life without the possibility of probation or parole for the first-degree murder offense and twelve years for the armed criminal action offense. (Sentencing Tr., Resp't Ex. 1, at 453, 457; J., Legal File, Resp't Ex. 2 at 71-74.)

Petitioner presented two points in his direct appeal. (<u>See</u> Pet'r Br., Resp't Ex. 3, at 15, 16, 17, 24.) First, Petitioner contended that his rights to due process and a fair and impartial trial as guaranteed by the Fifth and Fourteenth Amendments were violated in that there was insufficient evidence to establish the corpus delicti of first-degree murder and armed criminal action because there was insufficient evidence that Petitioner directly caused Victim's death by beating her. (<u>Id.</u> at 15, 17.) For his second point, Petitioner argued that the trial court violated

his rights to due process and to a fair and impartial trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments in that evidence of the earlier cutting incident was used to show Petitioner's propensity to commit the crimes and to impeach Petitioner's credibility.  (Id. at 16, 24.)

The Missouri Court of Appeals for the Eastern District affirmed the trial court's judgment in a summary order, supplemented by a memorandum sent only to the parties setting forth the reasons for the decision.  (**State v. Simmons**, No. ED92822, Per Curiam Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Apr. 13, 2010, Resp't Ex. 5.)  In its memorandum, the state appellate court found the facts as follows:

<u>Factual and Procedural Background</u>

Viewed in the light most favorable to the jury verdict, the following evidence was adduced at trial.  On April 22, 2007, [Petitioner] confronted his girlfriend, [Victim], and told her he wanted her to return a coat of his. [Victim] gave [Petitioner] the coat, and [Petitioner] cut [Victim]'s right cheek with a knife. For this attack, [Petitioner] was arrested for first-degree assault and armed criminal action.

In November 2007, [Petitioner] and [Victim] moved into an apartment together.  Shortly thereafter, [Victim] moved out. [Petitioner] called [Victim]'s mother's residence numerous times, threatening [Victim] and her mother, stating that he was going to kill one of them.  [Victim]'s mother obtained a restraining order against [Petitioner].  Towards the end of 2007, [Victim] moved back in with [Petitioner].  In the late afternoon of January 16, 2008, [Victim] was caretaking for Oscar Davis (Davis) at Davis's residence. [Petitioner] called Davis's house, threatening [Victim]'s life, saying that he was going to "knock the bitch."  Later that same evening, Queena Johnson (Johnson), a resident of the floor below [Petitioner] and [Victim]'s apartment, heard furniture moving and arguing coming from their apartment.  Johnson heard [Victim] yell, "Don't put your hands on me no more."  Johnson went to bed at approximately 11:00 p.m., but was woken up at about 2:00 a.m. by the noise of furniture moving again in [Petitioner] and [Victim]'s apartment.  At 3:00 a.m. [Petitioner] called his sister, Sherrion Zinn (Zinn), and told her that he had beaten [Victim] with a cane. Zinn called 911 and told the operator, and the paramedics, that [Petitioner] had told her that he had beaten [Victim] over the head with a cane and that she was dead

on the floor.

Officer Zachary Welker (Welker) responded to [Petitioner]'s apartment, where at [Petitioner]'s direction, he found [Victim] lying naked on the bathroom floor, dead, bruised and bloody. Blood was smeared all over the bathroom floor, bathtub, and shower curtain. Blood and hair were in the sink. On the bathroom floor were bloody mops, buckets, rags, and clothing, and a kitchen knife with no visible blood on it. Blood splatter were also discovered in [Petitioner]'s bedroom, and a walking cane was seized from [Petitioner]'s bedroom that had blood on it. Subsequent testing of DNA on the cane matched that of [Victim] and [Petitioner].

[Victim]'s autopsy revealed that she had suffered two fractured ribs in her back; contusions on her tongue, left ear, front upper chest, back and arms; lacerations on her face and right side of her scalp; and internal bleeding underneath her scalp and on the surface of her brain. The medical examiner concluded that [Victim] died of blunt trauma to the head and back, and that her lacerations were such that they could have been caused by a cane.

[Petitioner] was charged and convicted by a jury of first-degree murder and armed criminal action. The trial court sentenced [Petitioner] to concurrent terms of life imprisonment without the possibility of parole for the murder and 12 years' imprisonment for armed criminal action. . . .

(**Id.** at 2-3.)

With respect to Petitioner's argument that his rights to due process and a fair and impartial trial were violated because there was insufficient evidence that he beat Victim to death, the Missouri Court of Appeals stated,

Only when there is insufficient evidence to support a guilty verdict is a directed verdict of acquittal authorized. State v. Sanchez, 186 S.W.3d 260, 266 (Mo. banc 2006). In reviewing the sufficiency of evidence underlying a jury verdict, we must determine whether there was sufficient evidence from which a reasonable juror could have found each element of the offense to have been established beyond a reasonable doubt. State v. Reed, 181 S.W.3d 567, 569 (Mo. banc 2006). On review, we view the evidence in the light most favorable to the verdict, including favorable inferences that may be drawn from the evidence, and disregard all evidence and inferences to the contrary. Id. We defer to the jury's superior position to assess the credibility of witnesses and the weight and value

of their testimony.  State v. Johnson, 244 S.W.3d 144, 152 (Mo. banc 2008).

To be convicted of first-degree murder, a defendant must (1) knowingly, (2) cause the death of another person, (3) after deliberation upon the matter. State v. Roe, 6 S.W.3d 411, 414 (Mo. [Ct.] App. . . . 1999); State v. Ervin, 835 S.W.2d 905, 923 (Mo. banc 1992).  The *corpus delicti* in a homicide case consists of two elements: (1) proof of the death of the victim and (2) evidence that the criminal agency of another was the cause of the victim's death.  State v. Edwards, 116 S.W.3d 511, 544 (Mo. banc 2003).

The State preseneted evidence that [Victim] (1) died, (2) by being repeatedly struck and beaten to death by another with a cane, such fatal injuries being blows to her head and back. [Petitioner] claims that the evidence presented at trial established that it was just as likely that [Victim] died as a result of hitting her head in the bathtub.  The only evidence at trial that [Victim] hit her head in the bathtub was [Petitioner]'s own testimony.  We give deference to the superior position of the jury to assess the credibility of witnesses and the weight and value of their testimony.  Johnson, 244 S.W.3d at 152.  Furthermore, this inference is contrary to the jury verdict.  We view the evidence in the light most favorable to the judgment, granting the State all reasonable inferences from the evidence and disregarding any contrary evidence.  Id.

There are three elements to the crime of first-degree murder: "A person commits the crime of murder in the first degree if he (1) knowingly (2) causes the death of another person (3) after deliberation upon the matter." Section 565.020; State v. O'Brien, 857 S.W.2d 212, 217 (Mo. banc 1993).

Johnson testified that she heard [Petitioner] and [Victim] fighting throughout the evening and into the morning of the murder. [Petitioner] called Zinn immediately after the crime and told her he beat [Victim] with a cane.  Zinn told the 911 operator and paramedics that [Petitioner] had beaten [Victim] with a cane and she was dead on the floor of the bathroom. [Petitioner]'s cane was covered with blood from both [Victim] and [Petitioner].  The medical examiner testified that [Victim] had contusions all over her body, indicating multiple blows had been inflicted on her. [Victim] died from blunt trauma to the head and back, according to the medical examiner's testimony.  The medical examiner stated that the trauma to [Victim]'s head could have been caused by a cane.  We find that the foregoing constitutes sufficient evidence from which a reasonable juror could have found that [Petitioner] knowingly killed [Victim] beyond a reasonable doubt.  Reed, 181 S.W.3d at 569.

Proof of deliberation is ordinarily a function of evidence of the

circumstances surrounding the killing. <u>State v. Johnston</u>, 957 S.W.[2]d 734. 747 (Mo. banc 1997). The infliction of multiple blows constitutes circumstances surrounding the killing indicating deliberation. While the evidence of multiple wounds is not conclusive, numerous wounds or repeated blows may support an inference of deliberation. <u>State v. Cole</u>, 71 S.W.3d 163, 169 (Mo. banc 2002). Deliberation requires only a brief moment of "cool reflection" and may be inferred from the fact that a defendant had the opportunity to terminate an attack after it began. <u>Id.</u> Here, there was also an all-night period of fighting that became physical leading up to the murder. Furthermore, [Petitioner] had made several threats to kill [Victim] before he actually did it. Again, we find this evidence sufficient to cause a reasonable juror to find, beyond a reasonable doubt, that [Petitioner] deliberated upon the murder of [Victim]. <u>Reed</u>, 181 S.W.3d at 569.

Based on the foregoing, Point I is denied.

(<u>**Simmons**</u>, No. ED92822, Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b),

dated Apr. 13, 2010, Resp't Ex. 5, at 4-6.)

In denying Petitioner's second point on appeal, in which he contended that his rights to

due process and a fair and impartial trial were violated by the admission of the earlier cutting

incident, the state appellate court found that

Evidence of prior bad acts is not admissible for the purpose of showing the propensity of the defendant to commit the charged crimes. <u>State v. Burns</u>, 978 S.W.2d 759, 761 (Mo. banc 1998). Evidence of prior bad acts may be admissible, however, if it is logically relevant in that it has some tendency to establish directly the defendant's guilt of the charged crimes and if its probative value outweighs its prejudicial effect. <u>Id.</u>

In murder cases, prior misconduct by the defendant toward the victim is logically relevant to show motive, intent, or absence of mistake or accident. <u>State v. Tolliver</u>, 101 S.W.3d 313, 315 (Mo. [Ct.] App. . . . 2003). Such evidence is only admissible for those purposes, however, if the defendant puts motive, intent, mistake or accident at issue in the case. <u>Id.</u> Otherwise, the prejudicial effect of admitting the evidence is substantial. <u>Id.</u>

In the instant case, [Petitioner] introduced at trial the issue of his motive and intent in striking [Victim] because he claimed that he struck [Victim] with

his cane in self-defense. Therefore, it was permissible for the State to present evidence that [Petitioner] had cut [Victim]'s cheek with a knife on a prior occasion. Raising self-defense to an assault or murder charge "puts motive and intent squarely at issue, thereby making evidence of prior assaults against the same victim relevant." [Id.] at 315. This evidence tended to show that he was the initial aggressor in the fight with [Victim] that led to her death. As such, it was admissible.

   Accordingly, Point II is denied.

**Simmons**, No. ED92822, Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Apr. 13, 2010, Resp't Ex. 5, at 6-8. The state appellate court issued its mandate on May 6, 2010. **State v. Simmons**, No. ED92822, May 6, 2010 docket entry (Docket sheet available at https://www.courts.mo.gov/casenet/cases/searchDockets.do) (last visited June 1, 2015). The Missouri Court of Appeals' docket sheet for Petitioner's direct appeal reveals that Petitioner did not seek review in a higher court.[6] (See subsequent docket entries on Petitioner's direct appeal docket sheet, id.)

   Petitioner filed a timely pro se motion for post-conviction relief, in which he set forth numerous claims, including seven claims that his trial attorney provided ineffective assistance of counsel, a claim that the pre-trial court erred in denying his trial attorney's motion to withdraw and his private attorney's request for a continuance; a claim that the change in charges from second-degree murder and armed criminal action to first-degree murder and armed

---

[6] That docket sheet does disclose that, in 2013, Petitioner filed in the Missouri Court of Appeals two unsuccessful motions to recall the mandate and one unsuccessful motion to file an out-of-time post-conviction motion under Missouri Supreme Court Rule 29.15(b) ("motion for post-conviction relief"). (See **State v. Simmons**, No. ED92822, docket entries dated June 17, 2013, June 18, 2013, July 18, 2013, Aug. 6, 2013, Oct. 15, 2013, and Oct. 30, 2013 entry (Docket sheet available at https://www.courts.mo.gov/casenet/cases/searchDockets.do) (last visited June 1, 2015).)

criminal action was "without jurisdiction," and several claims of trial court error. (Pet'r Pro Se Post-Conviction Mot., Legal File, Resp't Ex. 7, at 4-31.)

For the ineffective assistance of counsel claims, Petitioner contended that his trial attorney failed to interview or investigate prosecution witnesses, Tolbert and Davis, and failed to investigate records about the telephone calls Petitioner reportedly made to Tolbert and Davis; failed to investigate prosecution witness Boehm regarding the address on Romaine Place; failed to call, interview, or investigate witnesses who would assist with Petitioner's defense, specifically, Lindsay and two other unnamed residents who lived in the Greenwood apartments, along with the property manager and maintenance man for that property; failed to interview or investigate prosecution witness Johnson, or file a motion for production of favorable evidence, "to show Ms. Johnson lied on the stand in exchange for a favor from the prosecution" because she first stated she heard furniture moving and then said she heard someone say "don't hit me no more, through the floor with [Petitioner's] t.v. on, with a nice volume, that stays on every night"; failed to investigate the competence of prosecution witness Zinn; failed to investigate or object to rebuttal witness Officer Boggs's testimony regarding Victim's out-of-court statement to him, failed to investigate or object to rebuttal witness Officer Sailor's testimony that Petitioner said Victim had told Petitioner that she forgave him for the cut on her cheek, failed to investigate Victim's report to Maplewood police that Petitioner was harrassing her, and failed to obtain Maplewood police department records from that incident and from "the num[]erous . . . times [Petitioner] . . . call[ed] them on [Victim] for abuse and disturbance"; and put Petitioner "on the stand [to] lie" that he "lost it" or "panicked" during the January 2008

incident.  (Id. at 10-12.)

For the claim that the pre-trial court improperly denied Petitioner's trial attorney's motion to withdraw, along with his private attorney's request for a continuance, Petitioner urges that his attorney should have had at least 120 days after the new indictment to seek a continuance and he was well within that time when, on February 6, 2009, he sought to have a new attorney enter an appearance and that attorney requested a continuance of the February 9, 2009 trial date. (Id. at 12.)

With respect to the claim that the trial court was without jurisdiction to increase the murder charge, Petitioner contended that it was not permissible to make such a change because the change increased the degree of the murder offense and the range of punishment.  (Id. at 13.)

As to the alleged trial court errors, Petitioner argued that the court erroneously granted the State's motion to strike five African-American venirepersons who had not disclosed a prior arrest; the trial court erroneously overruled Petitioner's objection to the State's mischaracterization of circumstantial evidence, which included physical evidence, during voir dire; the trial court erroneously allowed the Sheriff to bring Petitioner into the courtroom while still handcuffed; the trial court erroneously denied Petitioner's motion to suppress statements made at the scene prior to Petitioner being given Miranda rights and at the police station after Petitioner awakened and was given the Miranda rights; the trial court erred in granting the State's motion in limine that Petitioner not be allowed to name the medications "whose influence he was under at the time of th[is] incident"; the trial court erred in sustaining the State's objections to questions that would allow Petitioner to testify to his intent or state of mind

at the time of the incident; the trial court erroneously overruled Petitioner's objection to Russo's rebuttal testimony that no fingerprints were on the knife found at the scene; the trial court erroneously granted the State's motion in limine precluding evidence of Victim's sexual activity; and the trial court erroneously denied Petitioner's motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence. (Id. at 13, 14, 18-19, 21, 29-31.)

In an amended motion for post-conviction relief filed by Petitioner's appointed attorney, Petitioner requested an evidentiary hearing and presented four claims that his trial attorney provided ineffective assistance of counsel and his rights to due process, to present a defense, and to a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments were violated by that attorney's challenged conduct. (Pet'r Am. Post-Conviction Mot., Legal File, Resp't Ex. 7, at 35-65.) Specifically, Petitioner asserted his trial attorney failed to file a motion to dismiss the first-degree murder and armed criminal action charges based on prosecutorial vindictiveness, id. at 38-44; failed to elicit, during direct examination of Petitioner, testimony about specific acts of violence that Victim committed against Petitioner prior to the January 2008 incident giving rise to the charges, id. at 44-51; failed to locate and call Lindsay to testify "about his observations of [Victim]'s aggression toward" Petitioner when they lived in the Greenwood apartments, id. at 51-56; and failed to request a mistrial after the venire panel reportedly "observed [Petitioner] in handcuffs in the custody of two sheriffs," id. at 56-61.

The post-conviction motion court[7] held an evidentiary hearing at which Petitioner's trial

---

[7] The judge presiding over Petitioner's post-conviction motion proceeding had also presided over Petitioner's criminal trial and sentencing proceedings.

attorney and Petitioner testified.  Post-Conviction Mot. Hr'g Tr., Resp't Ex. 6 at 20-147.   In

relevant part, Petitioner's trial attorney testified as follows

> Q    Did [Petitioner] ever discuss with you that he felt as though he had
>      acted in self-defense in killing [Victim]?
>
> A    . . . [M]any times [he expressed] a desire that we should . . .  Use
>      the defense of self-defense . . . .
>
> Q    In discussing with [Petitioner] the defense that he should present at trial,
>      did you have a recommendation as to what defense you felt was best?
>
> A    Yes.
>
> Q    What was the defense?
>
> A    I felt that his best defense would be to show evidence of a sudden
>      passion to get a lesser charge.
>
> Q    Are you talking about to get . . . voluntary manslaughter?
>
> A    Voluntary manslaughter or murder second.
>
> *    *    *
>
> Q    Given the extent of [Victim]'s injuries and [Petitioner]'s testimony
>      that, in fact, she had dropped the knife and she had then fallen and
>      that's what caused her injuries, did you even believe that deadly
>      force was probable as a defense in this case?
>
> A    No . . . .
>
> *    *    *
>
> A    I'm pretty sure he even testified he hit her with the cane a couple
>      times and knocked the knife out of her hand.  So what I tried to
>      explain to him what I thought he finally understood was at that
>      point that threat was over.
>
> Q    ([Prosecutor]) Given that that was his statement about what had
>      taken place, if you had tried to pursue self-defense, you actually

> had a concern that the State would bring in the prior assault first that [Petitioner] had been arrested for assaulting [Victim]?
>
> A    Yes.

(Id. at 17-18, 38-39.)

Thereafter, the post-conviction motion court concluded Petitioner's trial attorney was not ineffective, and denied Petitioner's amended post-conviction motion. Post-Conviction Mot. Ct. J., Legal File, Resp't Ex. 7, at 76-82.

In his post-conviction appeal, Petitioner pursued two points challenging the effectiveness of his trial attorney's assistance. Pet'r Br., Resp't Ex. 8, Pet'r Substitute Br., Resp't Ex. 9. First, Petitioner argued that his trial attorney provided ineffective assistance of counsel and denied his rights to due process and a fair trial, in violation of the Fifth, Sixth, and Fourteenth Amendments, by failing to file a motion to dismiss the first-degree murder and armed criminal action counts on the grounds of prosecutorial vindictiveness. Id. at 16-17, 20-21. For his second point on appeal, Petitioner urged his trial attorney provided ineffective assistance of counsel and violated his rights to due process, to present a defense, and to a fair trial, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, by failing to elicit from Petitioner on direct examination testimony about Victim's specific acts of violence toward Petitioner before the incident resulting in the charges. Id. at 18-19, 33.

The Missouri Court of Appeals for the Eastern District affirmed the motion court's decision in a summary order, supplemented by a memorandum sent only to the parties setting forth the reasons for the decision. Per Curiam Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Feb. 21, 2012, Resp't Ex. 11. In its opinion, the

state appellate court found:

# I.  BACKGROUND

In February 2008, the State initially indicted [Petitioner] for second-degree felony murder and armed criminal action in the death of [Victim] in January 2008. [Petitioner] told his attorney he was not interested in accepting a plea agreement but wanted to go to trial.  He instructed his attorney to prepare a self-defense strategy for trial.  In December 2008, the State filed a superseding indictment charging [Petitioner] with first-degree murder and armed criminal action.

A jury convicted [Petitioner] . . . of first-degree murder and armed criminal action.  The court sentenced [Petitioner] as a prior and persistent offender to life imprisonment without possibility of parole on the first-degree murder charge and twelve years on the armed criminal action charge, the sentences to run concurrently.  This Court affirmed his convictions.  State v. Simmons, 308 S.W.3d 273 (Mo. [Ct.] App. . . . 2010). [Petitioner] filed a motion for post-conviction relief pursuant to Rule 29.15, which was denied after an evidentiary hearing. [Petitioner] now appeals.

# II.  DISCUSSION

\*   \*   \*

## B.  Ineffective Assistance of Counsel Claims

In order to establish a claim of ineffective assistance of counsel, [Petitioner] must show that: (1) his counsel's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney; and (2) as a result, he was prejudiced.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Barnes v. State, 334 S.W.3d 717, 721 (Mo. [Ct.] App. . . . 2011).  To prove prejudice, [Petitioner] must show there is a reasonable probability that, but for his counsel's poor performance, the result of the proceeding would have been different.  Barnes, 334 S.W.3d at 721.  "To establish deficient performance, [Petitioner] must overcome the strong presumption that counsel acted professionally and that all decisions were based on sound trial strategy."  Id.  Trial strategy cannot serve as the basis for a claim of ineffective assistance of counsel.  Forrest v. State, 290 S.W.3d 704, 708 (Mo. banc 2009).  Decisions made after considering the law, facts, and alternative strategies generally will not be disturbed by our Court on review.  Id.

### 1. Motion to Dismiss Indictment

In his first point on appeal, [Petitioner] claims the motion court erred in denying his request for post-conviction relief because trial counsel was ineffective for failing to file a motion to dismiss the first-degree murder and armed criminal action charges on the grounds of prosecutorial vindictiveness. Specifically, he argues the prosecutor's decision to file the superseding indictment charging [Petitioner] with first-degree murder "was motivated by a desire to punish [Petitioner] for choosing to go to trial." Furthermore, [Petitioner] contends that his trial counsel's failure to file the motion to dismiss the first-degree murder charge[] resulted in [Petitioner's] conviction of a greater offense.

A defendant must show that the prosecutor's actual purpose in bringing enhanced charges was to penalize the defendant for exercising a constitutional right. State v. Sapien, 337 S.W.3d 72, 79 (Mo. [Ct.] App. . . . 2011). Well-established law has generally refused to apply the presumption in a pretrial setting. Id. "As a general proposition, a presumption of prosecutorial vindictiveness does not apply where enhanced charges are filed against a defendant in connection with pretrial plea negotiations." Id.

Here, at the evidentiary hearing, [Petitioner's] trial counsel testified the State initially indicted [Petitioner] on second-degree murder and armed criminal action. Counsel testified she recommended to [Petitioner] that he allow her to negotiate a plea agreement for second-degree murder consistent with the State's offer. However, [Petitioner] told her he wanted to go to trial. Subsequently, the prosecuting attorney advised [Petitioner's] counsel that, based on thorough review of the evidence, the State was planning to file a superseding indictment charging [Petitioner] with first-degree rather than second-degree murder along with the armed criminal action. Counsel testified [Petitioner] still wanted to take his case to trial.

[Petitioner's] counsel testified she did not consider filing a motion to dismiss the superseding indictment for first-degree murder on the basis of prosecutorial vindictiveness because she could not have "filed such a motion in good faith." Counsel was not ineffective for failing to file a motion to dismiss for prosecutorial vindictiveness if the motion would have been without merit and not in good faith. Cf. Tisius v. State, 183 S.W.3d 207, 217 (Mo. banc 2006). Moreover, [Petitioner] did not demonstrate the prosecutor's actual purpose in filing the superseded indictment was to penalize him for choosing to go to trial

rather than accepting a plea agreement. The motion court did not err in not finding [Petitioner's] counsel was ineffective for failing to file a motion to dismiss. [Petitioner's] first point is denied.

## 2. Victim's Alleged Prior Acts of Aggression

In his second point on appeal, [Petitioner] claims the motion court erred in denying his request for post-conviction relief because trial counsel was ineffective for failing to elicit [Petitioner's] testimony on direct examination that [Victim] committed specific acts of violence against him. [Petitioner] argues the testimony would have been relevant, material and admissible on the issue of self-defense, and there is a reasonable probability the outcome of the trial would have been different.

At the evidentiary hearing, trial counsel testified that [Petitioner] wanted her to present a defense of self-defense as a trial strategy. Counsel testified she thought [Petitioner's] best defense "would be to show evidence of a sudden passion to get a lesser charge." Additionally, counsel testified she attempted to explain to [Petitioner] that after his trial testimony that he hit [Victim] with his cane and knocked the knife out of her hand, the threat was over and a claim of self-defense would not be feasible. Under cross-examination, [Petitioner's] trial counsel admitted she was concerned if she tried to pursue a self-defense theory, the State would present evidence of his prior assault on [Victim], as well as a pending charge for first-degree assault in St. Louis County. Trial counsel's decision not to elicit testimony from [Petitioner] concerning [Victim's] aggressive acts toward him was reasonable trial strategy, and therefore, cannot serve as the basis for a claim of ineffective assistance of counsel. Forrest, 290 S.W.3d at 708. Thus, the motion court did not clearly err in denying [Petitioner's] motion for post-conviction relief. Point two on appeal is denied.

Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated Feb. 21, 2012, Resp't Ex. 11, at 2-6.   The Missouri Court of Appeals issued its mandate on March 15, 2012.   <u>See</u> March 15, 2012 entry on docket sheet for **Simmons v. State**, No. ED96289 (Mo. App. filed Feb. 10, 2011) (docket sheet available at https://www.courts.mo.gov/casenet/cases/searchDockets.do) (last visited June 1, 2015).   That docket sheet reveals that Petitioner did not seek review by a higher court, <u>See</u> docket sheet for **Simmons v. State**, No. ED96289 (Mo. App. filed Feb. 10, 2011)  (docket sheet available at https://www.courts.mo.gov/casenet/cases/searchDockets.do) (last visited June 1, 2015).

Petitioner subsequently filed his pending federal habeas petition, in which he sets forth four grounds for relief.  Petitioner contends that the pre-trial court erred in not allowing Petitioner's attorney to withdraw or in not granting a continuance shortly before the start of trial (ground one); that his trial attorney provided ineffective assistance of counsel by failing to call as a witness at trial Lindsay, the unidentified tenants of apartments 30 and 31, and "the maintenance man" for the Greenwood apartments (ground two); that the trial court erred in allowing the jury to see Petitioner in the courtroom in handcuffs (ground three); and that Petitioner's trial attorney provided ineffective assistance of counsel in failing to elicit testimony from Petitioner that Victim had assaulted him in 2007 and that Petitioner was under the influence of several prescription medications and alcohol at the time of the January 2008 incident (ground four).

Respondent counters that the first and third grounds are procedurally barred because Petitioner did not pursue them in his direct appeal; the second ground as to Lindsay is

procedurally barred because Petitioner did not pursue it in his post-conviction appeal and is barred as to any other witness because Petitioner did not present the state courts with his claim about those witnesses; and the fourth ground lacks merit as to the prior assault and is procedurally barred as to the medications and alcohol at the time of the January 2008 incident, because he did not present that claim to the state courts.

## Discussion

Procedural Default.  In his first ground, Petitioner contends that the pre-trial court erred in not allowing Petitioner's attorney to withdraw or in not granting a continuance shortly before trial.  For his third ground, Petitioner asserts that the trial court erred in allowing the jury to see Petitioner in the courtroom in handcuffs.  Respondent counters that these grounds for relief based on lower court error are procedurally barred and may not be considered on their merits because they were not pursued in Petitioner's direct appeal.

In his second  ground, Petitioner argues that his trial attorney provided ineffective assistance of counsel by failing to call Lindsay and three other witnesses from the Greenwood apartments.  Respondent urges that this claim is barred from consideration on its merits as to Lindsay because Petitioner did not pursue it in his post-conviction appeal and as to the other individuals because Petitioner cannot expand the factual and legal theory for a claim in a federal habeas proceeding beyond the factual and legal theory presented to the state courts.

In ground four, Petitioner asserts that his trial attorney provided ineffective assistance of counsel by failing to elicit testimony from Petitioner regarding Victim's 2007 assaults on Petitioner ("prior assault testimony") and by failing to elicit Petitioner's testimony regarding his

use of prescription medications and alcohol around the time of the January 2008 incident ("substance use testimony").  Respondent argues that this claim is procedurally barred only to the extent it focuses on a failure to elicit Petitioner's substance use testimony, because Petitioner did not present that part of the claim to the state courts.

To avoid procedurally defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim.  **Wemark v. Iowa**, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting, in part, Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam)); accord **Baldwin v. Reese**, 541 U.S. 27, 29 (2004).  "A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition."  **Wemark**, 322 F.3d at 1021 (quoting Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996)).  A petitioner must also exhaust his state remedies, by giving "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  **Grass v. Reitz**, 643 F.3d 579, 584 (8th Cir. 2011) (internal quotation marks omitted) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).  Claims that have not been exhausted and fairly presented to the state courts are procedurally defaulted and may not be considered on their merits by a federal habeas court.  See **Wemark**, 322 F.3d at 1022-23.

To the extent Respondent challenges Petitioner's claims as procedurally barred, Petitioner has not properly pursued the claims in the state courts.  Missouri state law requires

the raising of constitutional claims at the first available opportunity in the state court proceedings.  See **In re T. E.**, 35 S.W.3d 497, 504 (Mo. Ct. App. 2001).  Alleged errors in a lower court proceeding, including constitutional claims of trial error, must be raised on direct appeal; for "[p]ost-conviction motions cannot be used as a substitute for direct appeal or to obtain a second appellate review." **State v. Clark**, 859 S.W.2d 782, 789 (Mo. Ct. App. 1993); accord **State v. Twenter**, 818 S.W.2d 628, 636 (Mo. 1991) (en banc) (a post-conviction proceeding "is not a substitute for direct appeal, and matters that properly should have been raised by direct appeal may not be litigated in a post-conviction proceeding").   "If the allegations of [lower court] error are constitutional violations, they are not cognizable [in a post-conviction proceeding] unless exceptional circumstances are shown which justify not raising the constitutional grounds on direct appeal." **Clark**, 859 S.W.2d at 789; accord **Amrine v. State**, 785 S.W.2d 531, 536 (Mo. 1990) (en banc).   Such exceptional circumstances include when, before the direct appeal, the petitioner lacked knowledge, due to a state actor's conduct, of the information needed to make the claim.  See, e.g., **Frazier v. State**, 431 S.W.3d 486, 492-93 (Mo. Ct. App. 2014) (allowing consideration during a post-conviction proceeding of a contention that a prosecutor violated Brady v. Maryland, 363 U.S. 83 (1963), by failing to disclose that the victim, and only eyewitness, had three misdemeanor convictions and two pending criminal cases).

Here, Petitioner failed to pursue on direct appeal any claim that the pre-trial court's denial of his attorney's request to withdraw or denial of the request for continuance was error and any claim regarding alleged error by the trial court in allowing the jury to see Petitioner in

the courtroom in handcuffs, the claims in grounds one and three. These alleged errors occurred in pre-trial and trial court proceedings when Petitioner or his attorney was present. Petitioner clearly was or should have been aware of the alleged lower court errors before and at the time of his direct appeal. The mere fact that Petitioner's direct appeal attorney failed to raise those alleged errors in Petitioner's direct appeal does not constitute an exceptional circumstance justifying the raising of those errors in subsequent state court proceedings; otherwise, every alleged lower court error omitted by an attorney from a direct appeal could be presented in subsequent state court proceedings and the "exceptional circumstance" requirement would be eliminated for such omitted errors. Therefore, grounds one and three are procedurally defaulted.

Petitioner's remaining grounds, grounds two and four, are claims that his trial attorney provided ineffective assistance. The earliest point and exclusive procedure for raising a claim that an attorney provided ineffective assistance of counsel is in a post-conviction motion; a motion court's decision on such motions are subject to appeal; and successive post-conviction motions are not permitted. Mo. S. Ct. Rule 29.15(a), 29.15(k), and 29.15(l); **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006). Claims that should have been but were not presented in a post-conviction motion or on appeal from a denial of a post-conviction motion are procedurally defaulted and may not be considered in a federal habeas proceeding. See **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006) (finding claims not presented in an amended Rule 29.15 post-conviction motion or on appeal from the denial of that motion are procedurally defaulted).

Petitioner presented in his amended post-conviction motion the claim in ground two that his trial attorney provided ineffective assistance by failing to investigate or call Lindsay as a witness. The post-conviction motion court denied that claim on its merits. Petitioner did not pursue that ineffective assistance of trial counsel claim in his post-conviction appeal.

Petitioner presented in his pro se post-conviction motion the claim in ground two that his trial attorney provided ineffective assistance by failing to investigate or call two tenants and the "maintenance man" from the Greenwood apartments. That claim was not, however, pursued as part of either Petitioner's amended post-conviction motion or Petitioner's post-conviction appeal.

The claim in ground four that Petitioner's trial attorney was ineffective in failing to elicit testimony from Petitioner that he was under the influence of several medications and alcohol at the time of the January 2008 incident was not presented in Petitioner's pro se and amended post-conviction motions, and was not pursued in Petitioner's post-conviction appeal. To the extent Petitioner asserted in his pro se post-conviction motion error by the trial court when it precluded the identification of medications Petitioner had taken at the time of the January 2008 incident, the legal basis of that alleged trial court error is not the same as the legal basis for Petitioner's present ineffective assistance of counsel claim that the trial attorney failed to elicit such testimony.

Under the circumstances, Petitioner did not fairly and properly present to the state courts all of ground two and the part of ground four based on Petitioner's trial attorney's failure to elicit testimony about Petitioner's substance use; Petitioner does not now have a remedy for

presentation of such claims to the state courts; and those grounds for relief are procedurally defaulted.  See **id.**; **Sweet v.  Delo**, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (finding one of the petitioner's ineffective assistance of counsel claims defaulted because it was not presented at any stage of his post-conviction proceedings and another such claim defaulted because the petitioner "failed to raise it in his post-conviction appeal").

Therefore, all of grounds one, two, and three, as well as that portion of ground four that focuses on the alleged ineffective assistance of Petitioner's trial attorney in failing to elicit Petitioner's substance use testimony, are procedurally defaulted.

Absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of a claim procedurally defaulted due to a petitioner's failure to follow applicable state procedural rules in raising the claim in state court.  **Sawyer v. Whitley**, 505 U.S. 333, 338-39 (1992); accord **Skillicorn v. Luebbers**, 475 F.3d 965, 976-77 (8th Cir. 2007) ("Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims"). "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] .. 'impeded [his] efforts to comply with the State's procedural rule.'" **Maples v.  Thomas**, 132 S. Ct. 912, 922 (2012) (alterations in original) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)).  There is no exhaustive catalog of the objective impediments "and the precise contours of the cause requirement have not been clearly defined." **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999).

In his reply, Petitioner seems to argue that his failure to raise the lower court's alleged errors on direct appeal results from his direct appeal attorney's failure to present those grounds, and, based on that attorney's conduct, his failure to pursue those grounds should be excused under **Martinez v. Ryan**, 132 S. Ct. 1309 (2012). Petitioner also contends that his post-conviction appeal attorney's failure to present the procedurally defaulted ineffective assistance of trial counsel claims in his post-conviction appeal should excuse that default.

While **Martinez** concluded an attorney's conduct in a state court proceeding may, under limited circumstances, support a finding of "cause" for a petitioner's failure to present the state courts with an ineffective assistance of trial counsel claim pursued in a federal habeas proceeding, such as the procedurally defaulted claims in grounds two and four, that case is inapplicable here because it did not address as "cause" the conduct of an attorney other than a post-conviction motion attorney, whose conduct is not challenged by Petitioner as a basis for cause. Therefore, any action of or omission by Petitioner's attorneys for his direct appeal or for his post-conviction appeal may not constitute the cause needed to allow this Court to consider the merits of Petitioner's procedurally defaulted claims. See **Dansby v. Hobbs**, 766 F.3d 809, 833-34 (8th Cir. 2014) (declining to extend Martinez to allegedly ineffective assistance by direct appeal counsel), petition for cert. filed, ____ U.S.L.W. ____ (U.S. Mar. 5, 2015) (Nos. 14-8782 and 14A786); **Arnold v. Dormire**, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (not applying Martinez to allegedly ineffective assistance by post-conviction appeal counsel). Additionally, **Martinez** did not address an attorney's failure to raise a claim other than an ineffective assistance of trial counsel claim; so, that case does not support a finding of cause with respect

to grounds one and three, which are based on alleged lower court errors rather than on the allegedly ineffective assistance of Petitioner's trial attorney. **Dansby**, 766 F.3d at 833-34 (declining to extend <u>Martinez</u> to claims of trial error).

Because no cause has been established, it is unnecessary to consider whether Petitioner has demonstrated prejudice. **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc). Under the circumstances, no cause and prejudice has been established to permit consideration of the merits of the procedurally defaulted claims in grounds one through four.

The merits of Petitioner's defaulted claims may be reached, despite the absence of a showing of cause and prejudice for his procedural default, if he establishes that a failure to consider the claims' merits will result in a fundamental miscarriage of justice. That exception to a claim's procedural bar "requires a habeas petitioner to present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." **Abdi v. Hatch**, 450 F.3d 334, 338 (8th Cir. 2006). Petitioner must show not only new evidence, but "that 'it is more likely than not that no reasonable [fact-finder] would have convicted him in light of th[at] new evidence.'" **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)); <u>accord</u> **House v. Bell**, 547 U.S. 518, 536-39 (2006) (<u>Schlup</u> standard applies to determine whether defaulted claims in a first federal habeas petition should be considered based on actual innocence). Evidence is "new" for purposes of this test "if it was 'not available at trial and could not have been discovered earlier through the exercise of due diligence.'" **Osborne**, 411 F.3d at 920 (quoting <u>Amrine v. Bowersox</u>, 238 F.3d 1023, 1029 (8th Cir. 2001)). "'Without any new evidence of innocence, even the existence of a

concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Schlup, 513 U.S. at 316).

Petitioner has not submitted any new evidence of his actual innocence so as to permit this Court to consider the merits of Petitioner's defaulted claims.

Under the circumstances, grounds one through three and the substance use portion of ground four are procedurally barred due to Petitioner's procedural default and failure to demonstrate either cause and prejudice or a fundamental miscarriage of justice to support consideration of the merits of those procedurally barred claims. Therefore, the undersigned will deny those claims without further consideration of their merits.

The Court will proceed to consider the merits of the remaining claim, the portion of ground four focusing on Petitioner's trial attorney's allegedly ineffective assistance of counsel in failing to elicit testimony from Petitioner about Victim's 2007 assaults against him.

Standard of Review - Federal Habeas under 28 U.S.C. § 2254. "In the habeas setting, a federal court is bound by the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")] to exercise only limited and deferential review of underlying state court decisions." **Lomholt v. Iowa**, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." **Williams v. Taylor**, 529 U.S. 362, 413 (2000) ("**Taylor**").  If the state court's decision is not "contrary to" clearly established law, then the standard of "unreasonableness" applies and is "meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" **Williams v. Roper**, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)).  A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." **Taylor**, 529 U.S. at 407-08; see also **id.** at 413.  "The unreasonable application inquiry is an objective one." **de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009).

In reviewing state court proceedings to ascertain whether they are contrary to or involve an unreasonable application of clearly established federal law, this Court "is limited to the record that was before the state court that adjudicated the claim on the merits." **Cullen v. Pinholster**, 131 S. Ct. 1388, 1398 (2011).  Additionally, this Court's review is limited to consideration of the United States Supreme Court precedents at the time the state court issues its decision on the merits. **Greene v. Fisher**, 132 S. Ct. 38 (2011) (relying on Cullen, supra); accord **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010) ("[o]nly rulings in [United States]

Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling [United States] Supreme Court holding on the point" (citations omitted)). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam)).

A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." **Ryan v. Clarke**, 387 F.3d 785, 790 (8th Cir. 2004) (internal quotation marks omitted) (quoting <u>Jones v. Luebbers</u>, 359 F.3d 1005, 1011-12 (8th Cir. 2004)). Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004). Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by a state court at either the trial or appellate levels. **Smulls**, 535 F.3d at 864-65. Importantly, the presumption of correctness applies to a state court's explicit findings as well as to its implicit findings.

**Grass v. Reitz**, 749 F.3d 738, 743 (8th Cir. 2014).

For the remaining claim, the claim that this federal habeas Court may consider on its merits, Petitioner asserts that his trial attorney provided ineffective assistance of counsel by failing to elicit from Petitioner testimony that Victim assaulted him in 2007 (part of ground four). Respondent counters that Petitioner is not entitled to federal habeas relief on this claim because the Missouri Court of Appeals' decision denying this claim on its merits during Petitioner's post-conviction appeal is not an incorrect or unreasonable application of **Strickland**, supra.

In its rejection of this claim in Petitioner's post-conviction appeal, the Missouri Court of Appeals concluded that Petitioner's trial attorney's decision not to elicit such testimony was reasonable trial strategy. The state appellate court noted the trial attorney testified that her position was that Petitioner's "best defense" was to establish "sudden passion to get a lesser charge"; she had explained to Petitioner that, after he testified that he hit Victim with his cane and knocked the knife out of her hand, "the threat was over and a claim of self-defense would not be feasible"; and the attorney was "concerned if she tried to pursue a self-defense theory, the State would present evidence of [Petitioner's] prior assault on Victim, as well as a pending charge for first-degree assault in St. Louis County."

Standard of Review - Federal Habeas Claim that Trial Attorney Provided Ineffective Assistance of Counsel. An accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel. **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)). In **Strickland**, supra,

the Supreme Court established a two-part test for determining whether or not an attorney provided effective assistance of counsel. The petitioner must establish both deficient performance, i.e., that "counsel's representation fell below an objective standard of reasonableness," and prejudice, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Strickland**, 466 U.S. at 687-88, 694. Importantly, to prevail on an ineffective assistance of counsel claim in a § 2254 habeas case, Petitioner

> must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under [28 U.S.C.] § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, he must show that the [state appellate court] applied Strickland to the facts of his case in an objectively unreasonable manner.

**Bell v. Cone**, 535 U.S. 685, 698-99 (2002) (one citation omitted); **Underdahl v. Carlson**, 381 F.3d 740, 742 (8th Cir. 2004).

For the performance prong of an ineffective assistance of counsel claim, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." **Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) ("**Armstrong**") (citing Strickland, 466 U.S. at 687-89). "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (quoting Nolan v. Armontrout, 973 F.2d 615, 618 (8th Cir. 1992)). The court is highly deferential in analyzing counsel's conduct and "'indulg[es] a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment.'" **Armstrong**, 534

F.3d at 863 (quoting <u>Middleton v. Roper</u>, 455 F.3d 838, 846 (8th Cir. 2006)).

To establish prejudice, there must be a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Strickland**, 466 U.S. at 694; **Armstrong v. Kemna**, 590 F.3d 592, 595-96 (8th Cir. 2010) ("**Kemna**") (quoting <u>McCauley-Bey v. Delo</u>, 97 F.3d 1104, 1105 (8th Cir. 1996)). "'A reasonable probability is [a probability] sufficient to undermine confidence in the outcome.'" **Kemna**, 590 F.3d at 596 (quoting <u>McCauley-Bey</u>, 97 F.3d at 1105); <u>accord</u> **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 694). The petitioner bears the burden of showing such a reasonable probability, **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992); and, in determining whether or not there was prejudice, the federal habeas court must consider the totality of the evidence, **Kemna**, 590 F.3d at 596.

The question of prejudice from counsel's performance need not be reached if the performance was not deficient. <u>See</u> **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. <u>See</u> **Strickland**, 466 U.S. at 697; **Williams v. Locke**, 403 F.3d 1022, 1025 (8th Cir. 2005).

The Missouri Court of Appeals concluded that, under the circumstances, it was reasonable trial strategy not to pursue a defense that would permit inquiry about Victim's prior assaults, and therefore, Petitioner's trial attorney did not provide ineffective assistance by failing to elicit such testimony. Having carefully considered the record and applicable legal principles, that decision is not an unreasonable or incorrect application of clearly established

federal law.  Moreover, the state court's factual findings on which that conclusion is based are supported by the available record, and Petitioner has not shown by clear and convincing evidence that the factual findings are incorrect.

**CONCLUSION**

The Court will deny Petitioner's federal habeas petition because grounds one through three, as well as the substance use portion of ground four, are procedurally barred and may not be considered on their merits; and the prior assaults portion of ground four is without merit.

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Jay Cassady, Warden of the JCCC where Petitioner is incarcerated, is **SUBSTITUTED** for the originally named Respondent.

**IT IS FURTHER ORDERED** that the attachment to Petitioner's Petition [Doc. 1-1], as well as Respondent's exhibits 2, 3, and 4, be placed and maintained under seal.

**IT IS FURTHER ORDERED** that the Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FINALLY ORDERED** that no certificate of appealability shall issue.  28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

 /s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 17th  day of June, 2015.